W. SHARP, Judge.
Glatthar appeals from an order entered by the circuit court which required that Virginia Nelson’s will and two codicils be deposited with the Clerk of the Circuit Court, Probate Division, for Orange County, Florida, and held in confidence and not revealed to anyone until further order of the court. This order was entered at the conclusion of an adjudicatory hearing held pursuant to section 744.331(5), Florida Statutes (1991), which resulted in Nelson’s being found to be totally incapacitated, and Glatthar (Nelson’s grandson) being appointed her plenary guardian. We disagree and remand for further proceedings. However, until this matter is further resolved by the circuit court in Orange County, which has jurisdiction over the Nelson guardianship, we direct that the order from which this appeal is taken shall remain in full force and effect.
The problem in this case is that there appears to be a conflict of interest between (on the one hand) the ward’s desires (strongly expressed to her prior attorney and her close friend) that her testamentary plan and disposition of her extensive properties and estate be kept secret from her children and grandchildren until after her death,[1] and (on the other hand) the extensive and potentially sweeping powers given to a plenary guardian to deal with a ward’s properties and to implement a ward’s estate plan, under Florida’s new Guardianship Law.
At the adjudicatory hearing, attorney Hoequist appeared as Nelson’s court appointed attorney. Also testifying at the hearing was attorney Murrah, who had represented Nelson for many years in the past, and who had helped manage her business and personal affairs. He was familiar with her living arrangements, needs and desires.
A “stack” of Nelson’s documents and records (including her will and codicils) were present in the courtroom. Apparently Murrah had hand-delivered Nelson’s signed testamentary documents to the court prior to the commencement of the *1207 proceedings. Prior to that time, he had kept them in his office. The judge stated that he intended to deliver all of the papers to the guardian, Glatthar.
Murrah questioned whether Nelson’s will and codicil should be turned over to Glatt-har, or their contents revealed, because of her prior instructions to him. She had made it clear to him and her closest friend that she wished her testamentary documents to be kept confidential and secret from her family until her death. Apparently, some of Nelson’s relatives had hired an attorney to discover the content of her will and codicils, because they feared she had disinherited them.
At the court’s request, Hoequist prepared the order sequestering Nelson’s testamentary documents. The judge found that Nelson had secreted her testamentary scheme from her family before she became incapacitated, and that even though she was then incapacitated, she had a continuing right of privacy with respect to the contents of her will and codicil. Glatthar concedes that under section 744.3215(l)(o), Florida Statutes (1991) an incapacitated person retains the right to privacy guaranteed by the Florida Constitution, art: I, § 23.
However, Glatthar argues that a guardian may exercise a ward’s right to privacy. He cites to In re Guardianship of Browning, 568 So.2d 4 (Fla.1990). In Browning, a guardian was permitted to remove a feeding tube, making certain the ward’s early death, in a situation in which the ward had executed a living will. That case differs from the facts here because the guardian in Browning was permitted to execute the previously expressed privacy right of the ward, whereas here the guardian seeks to defeat his ward’s desires and right of privacy-
Glatthar argues more persuasively that a plenary guardian cannot effectively perform all the duties and powers given him or her under the new Guardianship Law, without knowledge of the ward’s testamentary plan and relevant documents. A plenary guardian is defined as:
[a] person who has been appointed by the court to exercise all delegable legal rights and powers of the ward after the court has found that the ward lacks the capacity to perform all of the tasks necessary to care for his person or property, (emphasis supplied)
§ 744.102(8)(b), Fla.Stat. (1991).
With the court’s prior approval, a plenary guardian (or a limited guardian, if given sufficient powers) may take various acts and exercise various powers belonging to the ward, which requires knowledge of the ward’s testamentary plan or lack thereof.[2] Without such knowledge, the plenary guardian cannot determine whether to petition the court to exercise those powers, and he or she is foreclosed from exercising the full range of powers contemplated by Florida’s guardianship law.
However, giving the plenary guardian in this case possession of Nelson’s testamen *1208 tary documents or knowledge of their contents will necessarily go against the ward’s expressed wishes[3] and result in her loss of privacy. We cannot help but conclude that, in this regard, Glatthar has a conflict of interest with his ward,[4] and perhaps the more prudent course of action in this case would have been not to appoint him as plenary guardian.[5] However, no one challenged Glatthar’s appointment as plenary guardian for Nelson, and no one has appealed the order appointing him.
We think the best way to resolve this dilemma is to remand this cause to the lower court for further proceedings. The judge should again appoint a guardian ad litem to represent Nelson to determine whether or not the plenary guardian (Glatt-har) has a conflict of interest to such a degree he should be removed as guardian, and an impartial successor appointed in his place.[6] If no such compelling conflict exists, then the court could appoint a court monitor, pursuant to section 744.107,[7] to report to the court and guardian ad litem as to whether or not any exercise of powers pursuant to section 744.441 is advisable and in the ward’s best interest. The guardian ad litem could be empowered to exercise whatever powers might be required in this regard. Such procedures as are necessary should be undertaken in camera or in such a way as to preserve Nelson’s privacy rights. Glatthar could then continue as plenary guardian in all other regards, and Nelson’s testamentary documents would continue to be sequestered.
REVERSED and REMANDED.
COBB and GRIFFIN, JJ., concur.

. Apparently Nelson has no surviving spouse.

. Section 744.441, Florida Statutes (1989) makes specific provision (inter alia) that:
After obtaining approval of the court pursuant to a petition for authorization to act, a plenary guardian of the property, or a limited guardian of the property within the powers granted by the order appointing the guardian or an approved annual or amended guardianship report, may:
(17) Make gifts of the ward’s property to members of the ward’s family in estate and income tax planning procedures.
(18) When the ward’s will evinces an objective to obtain a United States estate tax charitable deduction by use of a split interest trust (as that term is defined in § 737.501), but the maximum charitable deduction otherwise allowable will not be achieved in whole or in part, execute a codicil on the ward’s behalf amending said will to obtain the maximum charitable deduction allowable without diminishing the aggregate value of the benefits of any beneficiary under such will.
(19) Create revocable or irrevocable trusts of property of the ward’s estate which may extend beyond the disability or life of the ward in connection with estate, gift, income, or other tax planning or in connection with estate planning.
(20) Renounce or disclaim any interest by testate or intestate succession or by inter vivos transfer.

. § 744.312(3)(a), Fla.Stat. (1991).

. See Tagliabue v. Fraser, 576 So.2d 401 (Fla. 5th DCA 1991).

. See § 744.309(3), Fla.Stat. (1991) ("[t]he court may not appoint a guardian in any other circumstance in which a conflict of interest may occur); and § 744.446(1) ("[i]t is essential to the proper conduct and management of a guardianship that the guardian be independent and impartial").

. §§ 744.474(11); 744.391, Fla.Stat. (1991). See Jannis v. Tanner, 533 So.2d 300 (Fla. 3d DCA 1988).

. That section provides:
The court may, upon inquiry from any interested person or upon its own motion in any proceeding over which it has jurisdiction, appoint a monitor. The monitor may investigate, seek information, examine documents, or interview the ward and shall report to the court his findings. The court shall not appoint as a monitor a family member or any person with a personal interest in the proceedings. Unless otherwise prohibited by law, a monitor may be allowed a reasonable fee as determined by the court and paid from the property of the ward. No full-time state, county, or municipal employee or officer shall be paid a fee for such investigation and report.