# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**DOLORES BALABAN,**
Petitioner,

v.

**PHILIP MORRIS USA INC.** and **R.J. REYNOLDS TOBACCO COMPANY,**
Respondents.

No. 4D17-2479

[April 18, 2018]

Petition for writ of certiorari to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 14-24204(19).

Juan P. Bauta, II, and James L. Ferraro of The Ferraro Law Firm, Miami, for petitioner.

Frances Daphne O'Connor and Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, D.C., for respondent Philip Morris USA Inc.

Jason T. Burnette of Jones Day, Atlanta, GA, for respondent R.J. Reynolds Tobacco Company.

### *ON MOTIONS FOR REHEARING AND MOTION FOR CLARIFICATION*

PER CURIAM.

We grant respondents' motions for rehearing. We further vacate our order denying petitioner's motion for clarification and grant that motion. As a result, we are withdrawing our original opinion and substituting the following opinion.

Dolores Balaban seeks certiorari review of a trial court order granting a motion to disqualify the Ferraro Law Firm ("the Ferraro firm") from representing her in a pending civil action against Philip Morris USA, Inc. (PM USA) and R.J. Reynolds Tobacco Company (RJR). Certiorari lies to review this order granting disqualification. *See Philip Morris USA Inc. v. Caro*, 207 So. 3d 944, 949 (Fla. 4th DCA 2016).

The trial court granted the motion based on this Court's recent decision in *Caro,* where we quashed a trial court order denying PM USA's motion to disqualify the Ferraro firm and its attorney Paulo Lima ("Attorney Lima"). *Id.* at 951. However, the circumstances in this case distinguish it from *Caro* and compel an expanded analysis, potentially including application of a different provision of the Rules Regulating the Florida Bar. The trial court departed from the essential requirements of law in finding *Caro* dispositive, in failing to hold an evidentiary hearing to make the required findings of fact, and in failing to rule on the issue of RJR's standing to join in the motion to disqualify. We thus grant the petition, quash the trial court's order, and return the case to the trial court for further proceedings consistent with this opinion.

Briefly stated, petitioner sued PM USA, RJR, and other defendants in 2014 in one of many *Engle*-progeny[1] cases involving cigarette smokers who suffered injury or died. PM USA moved to disqualify Attorney Lima and the Ferraro firm from representing petitioner, alleging that Attorney Lima had previously represented PM USA while employed by Hunton & Williams, LLP ("the Hunton firm") from 2005-15. The motion to disqualify included allegations that Attorney Lima billed more than 1,500 hours on PM USA matters including more than 1,300 hours defending PM USA in smoking and health litigation while working at the Hunton firm, with nearly 375 hours spent specifically on *Engle* tobacco-related issues. PM USA also alleged Attorney Lima had access to PM USA's litigation databases and had reviewed its internal documents, including those that were highly confidential and privileged. PM USA therefore claimed Attorney Lima and the Ferraro firm had an impermissible conflict of interest precluding representation of petitioner as the plaintiff in this case against it. RJR joined in the motion.

The motion cited Rule Regulating The Florida Bar 4-1.10(b) on imputation of conflicts of interest, which provides as follows:

> **(b) Former Clients of Newly Associated Lawyer**. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

2

Petitioner pointed out in her opposition to this motion that Attorney Lima had terminated his nearly two-year employment with the Ferraro firm shortly before the motion to disqualify was heard in this case. She argued that this event distinguished the facts in this case from those in *Caro.* In *Caro,* this Court concluded that Attorney Lima's "extensive prior representation of PM [USA] in defending and strategizing about *Engle* progeny cases" while with the Hunton firm was "substantially related to at least some of the issues" in Caro's lawsuit against PM USA. *Caro,* 207 So. 3d at 949. We applied Rule 4-1.10(b) and concluded that the movant, PM USA, had demonstrated that Attorney Lima had "actual knowledge of material confidential information." *Id.* at 950. We then ruled that the plaintiff's attorney in that case had not met the burden to prove that Attorney Lima had not actually acquired such information, and the trial court was directed to grant PM USA's motion for disqualification of the Ferraro firm. *Id.* at 950–51.

In the instant case, Petitioner argued that because Attorney Lima was no longer associated with the Ferraro firm at the time the motion to disqualify was heard, this was no longer a case involving a former client of a newly associated lawyer. Rather, the case now involved the client of a formerly associated lawyer and therefore Rule 4-1.10(c) controlled. That Rule provides as follows:

> **(c) Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

R. Regulating Fla. Bar. 4-1.10(c). Petitioner contended that the Ferraro firm could not be disqualified under this Rule unless the firm had PM USA's or RJR's confidential, material information. She presented deposition testimony and affidavits stating that no confidential

information from Attorney Lima's previous work at the Hunton firm had been provided to any lawyer or other employee of the Ferraro firm.

PM USA pointed out that Attorney Lima was employed by the Ferraro firm for approximately two years after leaving the Hunton firm, including nearly a full year after PM USA had filed its motion to disqualify. PM USA argued that if a law firm could hire a conflicted lawyer and allow that lawyer to work on cases while the lawyer's disqualification was being litigated, and only terminated the lawyer after the latter's disqualification in another case, that would constitute an improper evasion of the Rules Regulating The Florida Bar and would create the appearance of impropriety.

Petitioner also argued that RJR lacked standing to join in PM USA's motion to disqualify because it had no privity with Attorney Lima or the Ferraro firm. RJR countered that its "joint defense" relationship with PM USA conferred standing, and alleged that Attorney Lima had access to RJR's confidential information while he was an associate at the Hunton firm. In support of its position, RJR cited *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, which recognized that "someone other than the client may request disqualification" where a conflict of interest "is such as clearly to call in question the fair or efficient administration of justice." 575 So. 2d 630, 632 (Fla. 1991) (quoting R. Regulating Fla. Bar 4-1.7 cmt.).

The trial court held a non-evidentiary hearing on the motion to disqualify and concluded that *Caro* required it to grant the motion to disqualify the law firm in this case. In its written order, the court expressly rejected petitioner's argument that *Caro* no longer controlled because Attorney Lima had left the Ferraro firm. The court failed to address whether RJR had standing to join in PM USA's motion.

Orders on motions to disqualify are reviewed for abuse of discretion. Florida courts have held that disqualification of counsel "is an extraordinary remedy and should only be resorted to sparingly." *Manning v. Cooper*, 981 So. 2d 668, 670 (Fla. 4th DCA 2008) (quoting *Alexander v. Tandem Staffing Sols., Inc.*, 881 So. 2d 607, 608 (Fla. 4th DCA 2004)); *see also Vick v. Bailey*, 777 So. 2d 1005, 1007 (Fla. 2d DCA 2000). "It is well settled that disqualification of a party's chosen counsel is (1) a harsh and drastic remedy, (2) should be resorted to sparingly, and (3) must find its basis in counsel's violation of some rule of law or breach of the Code of Professional Responsibility resulting in an unfair advantage." *Kusch v. Ballard*, 645 So. 2d 1035, 1040 (Fla. 4th DCA 1994) (Stevenson, J., concurring in part and dissenting in part) (citing *Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp.,* 483 So. 2d 505 (Fla. 4th DCA 1986)).

4

While we recognize that imposing the remedy of disqualification may "abrogate important societal rights, such as the right of a party to his counsel of choice and an attorney's right to freely practice her profession," *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995), courts should not hesitate to disqualify an attorney where the circumstances justify such a severe remedy. "Disqualification, where appropriate, ensures that the case is well presented in court, that confidential information of present or former clients is not misused, and that a client's substantial interest in a client's loyalty is protected." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 6 cmt. i (2000).

We agree with petitioner that *Caro*, standing alone, is not dispositive because that case involved a request to disqualify an attorney still employed at the firm. Since Attorney Lima is no longer employed at the Ferraro firm, we need not decide whether the findings made by the trial court in *Caro* apply here to impose *per se disqualification* of the law firm under Rule 4-1.9. Because motions to disqualify must be decided on their own facts and circumstances, a court must take care to balance the interest of protecting the integrity of the judicial process against the right of a party to have the counsel of its choice. Although there may be certain judicially established facts from *Caro* that are applicable in the consideration of this matter, it is nonetheless the duty of the trial judge to consider them, along with other relevant facts, for the purpose of making appropriate findings and satisfying due process requirements. *See Akrey v. Kindred Nursing Ctrs. E., L.L.C.*, 837 So. 2d 1142, 1146 (Fla. 2d DCA 2003) (quashing disqualification order where "the trial court departed from the essential requirements of law by reaching its conclusion without conducting an evidentiary hearing" (quoting *Simon DeBartolo Grp., Inc. v. Bratley*, 741 So. 2d 1254, 1254 (Fla. 1st DCA 1999))).

An evidentiary hearing is required in this case to examine the matters dealt with by Attorney Lima during his tenure at the Ferraro firm and the depth of his involvement. Disqualification of the Ferraro firm under Rule 4-1.10(b) would be appropriate should the trial court find that Attorney Lima had significant involvement with *Engle*-progeny litigation/appeals while with the Ferraro firm and that he remained employed by the firm once it knew or should have known of the potential for disqualification. The Rules Regulating The Florida Bar, in general, indicate that the firm (not merely the attorney) should be disqualified from representing a client in a matter after the firm is put on notice of a conflict (as described in the Rules) involving the attorney and the opposing party. The Rules expressly consider both the attorney and law firm to be one and the same in terms of imputing disqualification. *See* R. Regulating Fla. Bar 4-1.10 cmt. ("Such

situations can be considered from the premise that a firm of lawyers is essentially 1 lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.").

On the other hand, in a situation where the conflicted attorney had little or no involvement with the matter or matters that created the conflict, had little contact with other firm attorneys working on them, and was then terminated shortly after the conflict came to the attention of the firm, Rule 4-1.10(b), standing alone, would not require the firm's disqualification from the ongoing case. *See Nissan Motor Corp. in U.S.A. v. Orozco*, 595 So. 2d 240, 241 (Fla. 4th DCA 1992) (remanding for application of Rule 4-1.10(c) and noting that the conflicted attorney had little involvement with the matter at issue at his new firm and the new firm terminated the conflicted lawyer "[a]s a result of the filing of the disqualification motion").[2] *If* the trial court on remand determines that the instant case is similar to *Nissan* and that Attorney Lima had little involvement with tobacco litigation beyond defending against disqualification motions during his tenure at the Ferraro firm, *then* the trial court must turn its attention to Rule 4-1.10(c) and make the appropriate inquiry and factual findings under that portion of the Rule.

Therefore, we grant the petition for writ of certiorari, quash the order granting disqualification, and return the case to the trial court for further proceedings consistent with this opinion. On remand, the trial court shall also address the issue of whether RJR has standing to join in PM USA's motion to disqualify.

DAMOORGIAN, FORST and KLINGENSMITH, JJ., concur.

\* \* \*

---

[2] *Nissan* is distinguishable from the instant case, as the attorney in *Nissan* "handled rather routine and perfunctory assignments as a junior associate" and "never acquired confidential and other protected information during his former employment." *Nissan Motor Corp.*, 595 So. 2d at 241 (quoting the trial court's order in that case).